UNITED STATES of America

v.

Michael Joe TAYLOR, Appellant.

UNITED STATES of America

v.

Chardale Arnaz BOWE, Appellant.

UNITED STATES of America

v.

Eric Lamont HUTCHINSON, Appellant.

Nos. 92–3112, 92–3143 and 92–3181.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 29, 1993.

Decided July 20, 1993.

John D. Sharer (appointed by the Court), with whom Mark R. Stabile argued the cause for appellant Bowe in No. 92–3143. James W. Richmond, Jr. (appointed by the Court), argued the cause for appellant Taylor in No. 92–3112. Diane Bratter (appointed by the Court), entered an appearance in No. 92–3181.

Mark A. Perry, Atty., U.S. Dept. of Justice, of the bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of the court, argued the cause for appellee. Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and William C. Bryson, Asst. U.S. Attys., entered appearances.

Before SENTELLE, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Michael Joe Taylor, Chardale Arnaz Bowe, and Eric Lamont Hutchinson appeal judgments of conviction on a variety of drug distribution and possession charges. They assign as error the District Court's denial of Taylor's motion to suppress cocaine found in his pocket at the time of his arrest; jury instruction on reasonable doubt; refusal to give Hutchinson's requested instruction on identification; and enhancement of Bowe's sentence for obstruction of justice. Because we find no error, we affirm appellants' convictions and sentences.

## I. BACKGROUND

After repeated complaints of drug dealing at the intersection of Rhode Island Avenue and Thayer Street in Northeast Washington, the District of Columbia Metropolitan Police Department set up a mobile observation post near there and monitored suspected narcot-

ics transactions. Using binoculars from a distance of twenty to forty feet, with an unobstructed view, two experienced officers inside the unit observed appellants Bowe and Hutchinson apparently selling drugs. Hutchinson and Bowe kept the drugs they were selling in a brown paper bag on the ground under the front bumper of a parked bus about ten feet from where they were standing.

After watching two apparent transactions, the officers observed Taylor approach and talk briefly with Hutchinson. Hutchinson then retrieved a small object from the brown paper bag, which he gave to Taylor in return for cash. Hutchinson replaced the brown paper bag, returned to the corner where Bowe was seated, and gave Bowe the money. Bowe counted the money and placed it in his pocket.

When Taylor left, the officers radioed a lookout, describing Taylor's clothing and physical appearance and identifying him as a suspected narcotics purchaser. The arresting officers recognized Taylor as fitting the radio description of the suspected drug purchaser. After identifying themselves, the police officers searched Taylor's outer clothing, but found nothing incriminating. The arresting officers then contacted the officers in the observation post who saw the transaction and were told to look in the watch pocket of Taylor's pants. A second search of the watch pocket yielded a ziplock bag containing a rock of crack cocaine. Taylor was arrested. Laboratory analysis determined that the substance was eighty percent pure cocaine base. One of the officers from the observation post identified Taylor at the police station as the purchaser in the third transaction.

In the meantime, after observing a fourth transaction, the officers contacted the "arrest team" by radio, identifying Bowe and Hutchinson as suspected narcotics sellers and describing their clothing and physical appearance. The officers who arrested Bowe and Hutchinson near the intersection where the sales took place recovered $178 in currency from Bowe's pocket and retrieved from the ground near the bus the brown paper bag which contained twenty-four ziplock bags of a rock-like substance later determined to be cocaine base, with an average purity of seventy-four percent.

Bowe and Hutchinson were indicted, tried and convicted of distribution of cocaine base and possession with intent to distribute five grams or more of cocaine base, both in violation of 21 U.S.C. § 841 (1988). On the same indictment Taylor was convicted of possession of cocaine base, in violation of 21 U.S.C. § 844 (1988). The District Court sentenced Taylor to twenty-one months in prison, followed by one year of supervised release; Bowe to concurrent terms of seventy-eight months in prison, followed by four years of supervised release; and Hutchinson to concurrent terms of 120 months in prison, followed by eight years of supervised release. All three defendants appealed.

## II. TAYLOR'S MOTION TO SUPPRESS

Appellant Taylor challenges the District Court's denial of his motion to suppress the cocaine seized from his person at the time of his arrest. The District Court stated that it saw "nothing at all impermissible from a constitutional standpoint about the police conduct in this case; and in considering the totality of the circumstances, the motion[] to suppress [is] denied."

■ In reviewing a denial of a motion to suppress, we review the District Court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo. United States v. Garrett,* 959 F.2d 1005, 1007 (D.C.Cir.1992). If the police have probable cause for arrest, an otherwise lawful warrantless arrest and a search of the arrestee and the area within his immediate control does not violate the Fourth Amendment. *United States v. Watson,* 423 U.S. 411, 416–19, 96 S.Ct. 820, 824–25, 46 L.Ed.2d 598 (1976); *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Whether the police have probable cause is determined from the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 230–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

■ We believe the totality of the circumstances at the time of Taylor's arrest was sufficient to establish probable cause. *See*

*United States v. White,* 655 F.2d 1302, 1303–04 (D.C.Cir.1981) (per curiam) (police had probable cause after observing suspect exchange currency for small object); *United States v. Davis,* 561 F.2d 1014, 1016–17 (D.C.Cir.) (police had probable cause after observing suspect engage in three identical suspicious currency and packet exchanges in high narcotics area), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). Thus, the crack cocaine recovered from his pants pocket was found during a search incident to a lawful arrest.

We are somewhat troubled because the District Court, although properly employing "totality of the circumstances" phraseology in rejecting Taylor's motion, never expressed a conclusion that the officers had probable cause to arrest Taylor. The government argues that this shortcoming is inconsequential because even if the police did not have probable cause, at the very least they had a "reasonable suspicion" that Taylor was involved in criminal activity, entitling them to stop and frisk him. *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). Under this scenario, the government urges that the discovery of the crack cocaine was part of the "careful exploration" of Taylor's outer clothing permitted by *Terry.* 392 U.S. at 16, 88 S.Ct. at 1877.

■■■ The *Terry* argument is without merit. A *Terry* stop may not be as intrusive as a search incident to an arrest based upon probable cause. Whereas a search on probable cause may be thorough enough to prevent the concealment of evidence, *see Chimel,* 395 U.S. at 762–63, 89 S.Ct. at 2039–40, a *Terry* search is limited to a protective search for weapons to protect the officer and others. *See Maryland v. Buie,* 494 U.S. 325, 334–36, 110 S.Ct. 1093, 1098–99, 108 L.Ed.2d 276 (1990); *Terry,* 392 U.S. at 24–27, 88 S.Ct. at 1881–83. The evidence seized from Taylor's pocket was clearly not the fruit of a protective search. The officers who arrested Taylor did not find a weapon or the cocaine during their initial search. Only after radioing the officers in the observation post and being told to search Taylor's watch pocket, did the officers find the cocaine. The government does not seriously argue that the

arresting officers believed Taylor to be concealing in his watch pocket a weapon that had eluded the earlier search, justifying a second "protective" search. Indeed, at oral argument, government counsel as much as admitted that this search did not satisfy *Terry*'s requirement that a search based upon reasonable suspicion be protective.

*Minnesota v. Dickerson,* —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), supports our conclusion. There the Supreme Court held that police can seize nonthreatening contraband detected through the sense of touch during a *Terry* frisk, as long as the frisk does not go beyond the parameters of a protective search, and is "strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at ——, 113 S.Ct. at 2132 (internal citation omitted). In this case the second search of Taylor's pocket did not fall within the contours of a legal *Terry* stop since the second frisk was not aimed at, let alone limited to, the discovery of weapons.

We nevertheless uphold the District Court's denial of the motion to suppress because there clearly was probable cause to arrest Taylor, even though the District Court failed to state on the record its essential findings of fact, as required by Rule 12(e) of the Federal Rules of Criminal Procedure. The essentially uncontested facts of this case are on all fours with a number of other cases in which this court has affirmed findings of probable cause, *see, e.g., United States v. White,* 655 F.2d 1302 (D.C.Cir.1981) (per curiam); *United States v. Davis,* 561 F.2d 1014 (D.C.Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). This is sufficient to support a conclusion that the court found the officers had probable cause. On several occasions, we have remanded summary denial of motions to suppress when it was unclear what factual findings underpinned the District Court's ruling. *See United States v. Dale,* 991 F.2d 819 (D.C.Cir.1993) (per curiam); *United States v. Williams,* 951 F.2d 1287 (D.C.Cir.1991). On others, we have upheld denials of suppression motions absent clear findings of fact and conclusions of law when "we [could] readily affirm the denial"

based upon an argument made by the government below and supported by evidence either uncontested or found credible by the District Court. *See United States v. Harley,* 990 F.2d 1340, 1341–42 & n. 1 (D.C.Cir.1993). This case falls in the latter category. The government argued at the suppression hearing that the arresting officers had probable cause to search Taylor's pockets. In addition, there is evidence the District Court adopted this view in its statement that the suppression motion was denied because there was nothing constitutionally impermissible in the officers' conduct "considering the totality of the circumstances."

Although we sustain its judgment on the facts before us, we remind the District Court that the interests of justice and clarity—not to mention the express requirements of Rule 12(e)—would be better served if it articulated clearly its findings of fact and conclusions of law. We do not offer this observation with any desire to burden the already scarce resources of the District Court. We simply note that the court must have found the facts mentally in order to have reached its conclusion of law, and needed only to state them aloud on the record to both meet the requirements of the Rule and facilitate the accurate review of the proceedings.

III. The Reasonable Doubt Instruction

■ Appellants Bowe and Hutchinson challenge the District Court's instruction on reasonable doubt given over their objections. (Appellant Taylor objected below, but does not raise this issue on appeal.) The question for us on review is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1197, 108 L.Ed.2d 316 (1990)). The Supreme Court has recently made clear that a constitutionally deficient reasonable-doubt instruction cannot be harmless error. *See Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

At trial, appellants requested the so-called "*Redbook*" instruction on reasonable doubt, which reads as follows:

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he cannot say that he has an abiding conviction of the defendant's guilt. It is *such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life.* However, it is not a fanciful doubt nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason. The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty. Its burden is to establish guilt beyond a reasonable doubt.

Young Lawyers Section of the Bar Ass'n of the District of Columbia, Criminal Jury Instructions: District of Columbia 46 (3d ed.1978) (the "*Redbook*").

The District Court refused to give the *Redbook* instruction, stating that "I don't know and have never known what a doubt is that could cause a reasonable person to hesitate or pause in the graver or more important transactions of life." Instead the court gave the following instruction, drawn from the Federal Judicial Center's *Pattern Criminal Jury Instructions:*

Again, as I told you at the start, every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with defendants Hutchinson, Bowe, and Taylor throughout the trial unless and until each is proven guilty beyond a reasonable doubt.

The burden is on the government to prove a defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial.

The law does not require a defendant to prove his innocence or to present any evidence.

Every defendant in a criminal trial has the absolute right not to testify. You must

not draw any inference of guilt against the defendants because they did not testify.

As I said, the government has the burden of proving the defendants guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it was only necessary to prove that a fact is more likely true than not true. We call that the preponderance of the evidence.

In criminal cases, the government's proof must be more powerful than that; it must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you **firmly convinced** of the defendant's guilt.

There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.

If based on your consideration of the evidence you're firmly convinced that a defendant is guilty of the crime charged, it is your duty to find him guilty.

If on the other hand you think there is a **real possibility** that a defendant is not guilty, you must give him the benefit of a doubt and find him not guilty.

*See* PATTERN CRIMINAL JURY INSTRUCTIONS 28 (Instruction 21) (FEDERAL JUDICIAL CTR.1988) (the *"Pattern Instructions"*).

■ Appellants urge us to order a new trial and direct the District Court to use the *Redbook* definition of reasonable doubt. Appellants make two separate arguments. First, they point out that this Court has explicitly endorsed reasonable doubt instructions based upon the *Redbook* definition and urge that this definition should be mandatory. In *Moore v. United States,* 345 F.2d 97 (D.C.Cir.1965), we did endorse an instruction on reasonable doubt virtually identical to the *Redbook* instruction rejected by the District Court here. In *Moore* we commended as "exemplary" an instruction defining reasonable doubt, in pertinent part, as "such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life." *Id.* at 98 & n. 1. *See also Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954) (endorsing expressing reasonable doubt "in terms of the kind of doubt that would make a person hesitate to act"); *Bishop v. United States,* 107 F.2d 297, 303 (D.C.Cir.1939) (defining "reasonable doubt" as "not a vague, speculative, imaginary something, but just such a doubt as would cause reasonable men to hesitate to act upon it in matters of importance to themselves").

While it is true that we have approved various reasonable doubt instructions that include the idea of hesitating to act in matters of importance, we have never suggested that the *Redbook* instruction is mandatory. In fact, both the Supreme Court and this Court have held clearly to the contrary. *See, e.g., Holland,* 348 U.S. at 140, 75 S.Ct. at 137 (Constitution does not require any particular form of words in advising the jury of the prosecution's burden of proof).

■ Second, appellants argue that there are two critical defects in the reasonable doubt instruction the District Court gave. They argue first, that the government's burden of proof was diluted by equating being "firmly convinced" of guilt with proof beyond a reasonable doubt. Second, appellants maintain that the language stating that there must be a "real possibility" of innocence impermissibly shifted the burden of proof to the defense. Appellants point out that the Fourth Circuit has criticized the "real possibility" language in *United States v. Porter,* 821 F.2d 968 (4th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). In *Porter* the Fourth Circuit noted that the District Court's instruction of reasonable doubt "introduced the unnecessary concepts of being 'firmly convinced' of guilt and a 'real possibility' of innocence." *Id.* 821 F.2d at 973. In addition, appellants note that the Second Circuit has also "suggest[ed] caution" in the use of the "real possibility" language from the *Pattern Instructions,* "as it may provide a basis for confusion and may be misinterpreted by jurors as unwarrantedly shifting the burden of proof to the defense." *United States v. McBride,* 786 F.2d 45, 52 (2d Cir.1986).

We are of the view that the District Court's explanation of reasonable doubt was not in error. This is not a case where the

court neglected to instruct the jury that it must find the defendants guilty beyond a reasonable doubt, *see Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2789 n. 14, 61 L.Ed.2d 560 (1979), nor is it a case where the court instructed the jury that it could find the defendants guilty based on some standard other than reasonable doubt, *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Here the District Court instructed the jury no fewer than thirteen times that the government was required to prove the defendants' guilt beyond a reasonable doubt, a fact which supports our conclusion that the instruction taken as a whole was not erroneous. *See United States v. Litchfield,* 959 F.2d 1514, 1521 (10th Cir.1992) (repeated instructions on government's burden of proof relevant to adequacy of definition of reasonable doubt).

*Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), is not to the contrary. In *Cage* the Supreme Court sustained a due process challenge to a jury instruction stating that reasonable doubt means "such doubt as would give rise to a grave uncertainty" and "an actual substantial doubt" precluding a "moral certainty [of guilt]." *Id.* at 40, 111 S.Ct. at 329 (internal quotation marks and emphasis omitted). The jury instruction here, unlike the instruction in *Cage,* did not "suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Id.* at 41, 111 S.Ct. at 329.

Furthermore, though several circuits have criticized reasonable doubt instructions modeled on the *Pattern Instruction,* none has found its use reversible error. *See United States v. Gibson,* 726 F.2d 869, 874 (1st Cir.), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984); *United States v. McBride,* 786 F.2d 45, 52 (2d Cir.1986); *United States v. Porter,* 821 F.2d 968, 973 (4th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *United States v. Hunt,* 794 F.2d 1095, 1100 n. 4, 1101 (5th Cir.1986); *United States v. Hall,* 854 F.2d 1036, 1038–39 (7th Cir.1988); *United States v. Velasquez,* 980 F.2d 1275, 1278–79 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2979, 125 L.Ed.2d 677 (1993);

*United States v. Barrera–Gonzales,* 952 F.2d 1269, 1273 (10th Cir.1992).

We do not share appellants' view that instructing jurors that they must be "firmly convinced" of a defendant's guilt lowers the government's burden of proof. *See United States v. Velasquez,* 980 F.2d 1275 (9th Cir. 1992). We agree with the Ninth Circuit that "[t]he phrases 'firmly convinced' and 'hesitate to act' are essentially two ways of conveying the same definition of reasonable doubt." *Id.* at 1278. *See also United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1386 n. 11 (9th Cir.1991) (noting that the Ninth Circuit Model Jury Instructions were revised in 1989 to define "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced that the defendant is guilty").

Nor do we think that informing jurors they must acquit a defendant if there is a "real possibility" of his innocence shifts the burden of proof to the defendant. In *United States v. Hunt,* 794 F.2d 1095 (5th Cir.1986), the Fifth Circuit considered and rejected an identical argument on a dual rationale. First, the *Hunt* court noted, the instruction does not suggest that the defendant must be the source of the "real possibility" of innocence; it only discusses the consequences if a reasonable doubt does arise. Second, the District Court there, as here, charged the jury on the presumption of innocence and the government's burden of proof, thus eliminating any concern that the jury might think the defendant was required to show a "real possibility" of his own innocence. *See also United States v. Barrera–Gonzales,* 952 F.2d 1269, 1273 (10th Cir.1992) ("real possibility" language does not shift the burden to the defendant).

■ In sum, we reject appellants' argument that the District Court erred by not using the *Redbook* instruction for reasonable doubt. Not only is the *Redbook* instruction not mandatory, *see Holland,* 348 U.S. at 140, 75 S.Ct. at 137, a District Court need not give any definition of reasonable doubt at all. The Fourth and Seventh Circuits have urged District Courts to avoid defining reasonable doubt unless requested to do so by the jury, due to the risk that any definition will create

confusion and impermissibly lessen the required burden of proof. *See United States v. Adkins,* 937 F.2d 947, 950 (4th Cir.1991); *United States v. Love,* 767 F.2d 1052, 1060 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); *United States v. Langer,* 962 F.2d 592, 599–600 (7th Cir.1992); *United States v. Lawson,* 507 F.2d 433, 443 (7th Cir.1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). Many years ago this Court stated that "we regard it as better practice to define [reasonable doubt] in each case no matter how experienced the jurors may be." *Mundy v. United States,* 176 F.2d 32 (D.C.Cir.1949). That case involved jurors who sat for multiple trials and the district judge's decision to not re-define reasonable doubt on the occasion of the particular trial at issue. *Mundy* did not directly address the issue of the relative merits of giving or not giving any definition at all. In any event, we are now of the opinion that the greatest wisdom may lie with the Fourth Circuit's and Seventh Circuit's instruction to leave to juries the task of deliberating the meaning of reasonable doubt.

The terms "reasonable" and "doubt" are as accessible to laymen as they are to experts. Ordinarily, a district judge may be best advised to attempt no definition of reasonable doubt unless the jury requests it. The purposes of having juries may be best served if juries, in the first instance, bear the responsibility for defining reasonable doubt. Experience has shown that attempts to define reasonable doubt add little in the way of clarity and often add much in the way of confusion and controversy. As the Supreme Court noted in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Id.* at 140, 75 S.Ct. at 137 (internal quotation marks omitted).

More recently, in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the Supreme Court held a particular reasonable doubt instruction to be constitutionally defective, but cited with apparent approval *United States v. Moss,* 756 F.2d 329, 333 (4th Cir.1985), for its criticism of attempts to define reasonable doubt. *Id.* at 330 n. *.[1] In the present case, the court's instruction on reasonable doubt did not lessen the prosecution's burden of proof and was not in error because there is no reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution.

## IV. INSTRUCTION ON IDENTIFICATION

Appellant Hutchinson also challenges the District Court's refusal to give his requested instruction on identification. At the close of evidence, Hutchinson requested an instruction on identification, asserting that "it is the theory of the defense that the police arrested the wrong individual." The government argued that there was no evidence, or even an implication, of misidentification in this case. The District Court agreed, adding that giving the instruction sought would confuse the jury.

As a general rule, the refusal to give an instruction requested by a defendant is reversible error only if "the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. Grissom,* 645 F.2d 461, 464 (5th Cir.1981); *see also United States v. De La Vega,* 913 F.2d 861, 872 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2011, 114 L.Ed.2d 99 (1991); *United States v. Gibson,* 726 F.2d 869, 874 (1st Cir.), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984).

More to the point, we have held that a District Court's refusal to give an identification instruction is not erroneous in the ab-

---

1. More recently still, in *Sullivan v. Louisiana,* —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court has held that a constitutionally deficient charge on reasonable doubt is never a *harmless* error. Significantly, however, that opinion did not require a definition of reasonable doubt; rather, the Court in *Sullivan,* as it had in *Cage,* dealt with a definition that was given, but was constitutionally misleading as to the standard.

sence of "special difficulties" in the identification of the defendant. *See United States v. Boney*, 977 F.2d 624, 632 (D.C.Cir.1992). In *Boney*, we upheld a refusal to give an instruction on identification in circumstances very similar to those in this case. The appellant in *Boney* executed a single transaction face-to-face with a police officer in an area lit by street lights; the officer radioed a description of appellant to his team; and shortly thereafter the officer identified appellant at the scene of the arrest. *Id.*

Predictably, Hutchinson attempts to distinguish his case from *Boney*. Here, the officer who observed Hutchinson was not face-to-face with him, but was in an observation post; the observed transactions in this case involved six different people; and the officer had been involved in over two hundred arrests over the past three years, ninety percent of which were drug-related. Hutchinson cites as controlling *Salley v. United States*, 353 F.2d 897 (D.C.Cir.1965), where we required an identification instruction in a narcotics case in which the undercover officer had been involved in as many as one hundred cases, because "[t]he possibility of error due to mistake and the fallibility of human memory is obvious." *Id.* at 898–99. He urges that the facts in this case are much more like the facts in *Salley* than in *Boney*.

We hold that *Boney* governs this case. Although in *Salley* we stated that a "requested instruction specifically bringing this defense of mistaken identity to the jury's attention in a narcotics case must be given," *id.* at 899, in *Boney* we described that holding as restricted "to fact patterns that reveal[ ] some special difficulty in the identification." *Boney*, 977 F.2d at 632. There were no special difficulties in identification in this case calling for a special instruction on identification. The officer who identified Hutchinson had a clear view of him engaging in narcotics transactions; there was no delay between identification and arrest; and the officer identified Hutchinson at the scene of the arrest. We reiterate that an instruction on identification is compelled *only* when there are special difficulties in the identification of a suspect *and* identification is a major

issue in the case. Such was not the case here.

## V. OBSTRUCTION OF JUSTICE

Appellant Bowe challenges the enhancement of his sentence for obstruction of justice. After the jury returned a guilty verdict against Bowe on the count charging possession with intent to distribute five grams or more of cocaine base, the jury resumed its deliberations as to the other count against Bowe, distribution of cocaine base, on which the jury had not yet reached a verdict. An hour later, the foreman informed the court that the jury had reached a verdict on the remaining count against Bowe. Bowe, who was at large on his own recognizance, was nowhere to be found. His attorney agreed to proceed with the verdict in Bowe's absence. The jury returned a verdict of guilty on the distribution count. The court issued a bench warrant for Bowe's arrest. He surrendered five days later.

The probation office recommended a two-level enhancement for obstruction of justice based on Bowe's leaving the courtroom. At sentencing Bowe argued that he did not "willfully" obstruct justice because he fled out of fear, rather than with the intent to disrupt the administration of justice. The District Court found that Application Note 3(e) to the Sentencing Guidelines section 3C1.1 directed a two-level enhancement. Section 3C1.1 states that a sentencing court may enhance a defendant's base offense level by two offense levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." UNITED STATES SENTENCING COMM'N, GUIDELINES MANUAL § 3C1.1 (Nov. 1992) ("U.S.S.G."). Application Note 3(e) states that such an enhancement is proper where a defendant "escap[ed] or attempt[ed] to escape from custody before trial or sentencing; or willfully fail[ed] to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1, application note 3(e). In adopting the presentence report recommendation that Bowe's offense level be enhanced by two levels, Bowe's imprisonment range under the guidelines in-

creased from 63–78 months (at offense level 26) to 78–97 months (at offense level 28). The District Court sentenced Bowe at the bottom of the guideline's range to 78 months' imprisonment, noting that "the two guideline ranges run into each other."

■ The issue of whether a defendant's obstructive conduct fits within section 3C1.1 involves a legal interpretation which we review *de novo. See United States v. Barry*, 938 F.2d 1327, 1332 (D.C.Cir.1991). Bowe argues that his conduct did not meet the *mens rea* required for section 3C1.1 because rather than "willfully" obstructing or attempting to obstruct justice, he fled out of fear. This argument is without merit. The example in application note 3(e) that places "willfully failing to appear, as ordered, for a judicial proceeding" within the ambit of the enhancing factor has no qualification addressing the underlying motivation. It would be difficult to imagine that any defendant fleeing from custody or willfully absenting himself from a hearing acted without the motivation of fear. Were he not afraid, he would be there. Thus, to adopt Bowe's argument would be to create not a loophole in the application of the Rule, but a black hole sucking up all possible examples which the obstruction enhancement might cover.

True, some decisions have held that section 3C1.1 includes a specific *mens rea* requirement that a defendant must have consciously acted for the purpose ᵒ obstructing justice. *See, e.g., United States ı. Gardiner*, 931 F.2d 33, 35 (10th Cir.1991); *United States v. Teta*, 918 F.2d 1329, 1333 (7th Cir.1990); *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990). However, each of these decisions applied Guideline law predating the effective date of the amended Guideline, which included application note 3(e). It is not a foregone conclusion the defendant's motivation of fear would have taken his conduct out of the *mens rea* requirement our sister circuits discerned under the unamended Guideline. That is, he fled because he was afraid, but presumably what his fear motivated him to accomplish was the obstruction of justice. It seems unlikely that he fled thinking the criminal justice process would go on in his absence, and if he thought so originally, he must have known better by the time he was free for five days before he ultimately surrendered to the bench warrant. Be that as it may, there is no tenable argument under the Guideline, as amended, that willfully absenting oneself from the return of verdict does not constitute willful obstruction of justice for purposes of section 3C1.1. *Cf.* FED.R.CRIM.P. 43(a) (requiring the defendant's presence "at every stage of the trial including ... the return of the verdict").

■ As we noted in *United States v. Monroe*, 990 F.2d 1370, 1376 (D.C.Cir.1993), the willfulness requirement of section 3C1.1 arguably "requires that the defendant consciously act with the purpose of obstructing justice." But, as we further noted in that opinion, decisions of other circuits defining that requirement have held as central to the willfulness inquiry "the defendant's knowledge of the requirements placed upon him by the court and his conscious decision to ignore its mandate." *Id.* (citing *United States v. Teta*, 918 F.2d at 1334, and *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990)). In the present case, there can be little serious argument that a defendant at large pending trial and having attended the bulk of trial did not know that he was also required to be present for the return of the verdict. Indeed, the record both before and after his nonappearance supports the view that he was well aware of the requirement that he be present for all proceedings against him and *willfully* absented himself in spite of that requirement.

## VI. CONCLUSION

For the reasons stated herein, appellants' convictions and sentences are affirmed.

*So ordered.*