AMERICAN SAMOA GOVERNMENT, Plaintiff,

v.

TALOFA SEFO, Defendant.

---

AMERICAN SAMOA GOVERNMENT, Plaintiff,

v.

KELEMETE PUNEFU, Defendant.

CR No. 10-98
CR No. 11-98

High Court of American Samoa
Trial Division

May 6, 1998

Before: KRUSE, Chief Justice, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
         For Defendants, Loretta Townsend, Assistant Public Defender

## ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS

Defendants Talofa Sefo ("Sefo") and Kelemete Punefu ("Punefu") are charged with unlawful possession of the controlled substance of marijuana, in violation of A.S.C.A. §§ 13.1022 and 13.1006. Sefo and Punefu both entered pleas of not guilty on February 4, 1998. On March 20, 1998, the court granted American Samoa Government's ("ASG") motion to consolidate the cases for trial.

On March 17, 1998, Sefo and Punefu moved to suppress evidence seized by law enforcement officers on the basis that such evidence was discovered as the result of an illegal detention or arrest of the defendants. ASG contends that the evidence is admissible because the defendants voluntarily accompanied the law enforcement officers to the police station and consented to the search or, alternatively, that the law enforcement officers had probable cause to believe that defendants had committed a crime in their presence and thus were entitled to search defendants and containers within their immediate control. Sefo and Punefu also seek to suppress written statements on grounds that such statements were not voluntarily, knowingly and intelligently made. ASG claims that the statements were taken when the defendants were lawfully detained, and were preceded by *Miranda* warnings and valid waivers thereof.

The motion came for hearing on April 9, continued on April 14, and concluded on April 20, 1998.

## Background

In the afternoon of January 23, 1998, Special Agent Va`a Sunia ("Agent Sunia") and Special Agent Moleli Tavai ("Agent Tavai") went to the Fagatogo marketplace for the purpose of locating Sefo. They intended to question Sefo about a robbery of poker machines. They arrived at the marketplace about 3:30 p.m. and spotted Sefo near the back of the Tedi of Samoa building. He was accompanied by two other individuals, Punefu and his brother A`asa Punefu ("A`asa").

The officers left their vehicle and watched the three individuals. They observed a fourth individual, known as Soli, approach the three and begin talking with them. Sefo, Punefu, and Soli began walking toward the Iseula longboat shed. Punefu was wearing a backpack, was walking slightly behind the other two, while looking up and down the area. Sefo, and Soli walked toward the public toilets across the street while Punefu remained on the street corner with his back to the other two and continuing to scan the area.

Agent Sunia told Agent Tavai that he suspected they were witnessing a marijuana purchase. Agent Tavai left to get the police vehicle and Agent Sunia moved his position so that he could continue to watch the three individuals. He observed Punefu on the street corner, continuing to keep a lookout of the area. He saw Soli hand money to Sefo. Sefo then pulled what appeared to be a ziplock plastic bag from the crotch area of his lavalava and handed it to Soli. Agent Sunia saw Soli and Sefo exchange a few words, then saw Soli hand the plastic bag back to Sefo, who replaced it in the crotch area of his lavalava. Soli left. Sefo and Punefu then walked towards each other and Agent Sunia approached them.

Agent Sunia asked Sefo and Punefu how they were doing and what they were doing there. They indicated they were waiting for the Iseula crew practice. Agent Sunia found this to be an odd response since Agent Sunia was a member of the crew team and knew that the defendants were not. He asked Sefo and Punefu if they would come to the police station so that he could ask them some questions about a robbery. They agreed. By that time, Agent Tavai had brought the police vehicle around, and the defendants got inside. Before getting in the vehicle, Punefu called to A`asa to take his backpack, but A`asa declined.

Once they were at the police station in Fagatogo, the officers took the defendants to an office. The defendants were advised that they were free to leave at any time. Agent Sunia asked them about the robbery and both Sefo and Punefu said that they knew nothing. Agent Sunia then asked Punefu if he had any drugs and if he had been trying to sell drugs in the marketplace. Punefu answered no to both questions. Agent Sunia then

asked if he could search Punefu's backpack. Punefu said yes. Agent Sunia asked Punefu if he would open the bag, but Punefu told Agent Sunia to do it. Agent Sunia found two twenty dollar bills and, inside a Christmas stocking, eleven plastic bags of what appeared to be marijuana.

Agent Sunia then turned to Sefo and asked if he had any drugs on his person. Sefo said no. Agent Sunia asked if he had any drugs in his lavalava. Sefo again said no, but pulled out a plastic bag of what appeared to be marijuana. He then took off his lavalava and pulled out from either his shorts or his lavalava three more plastic bags of what appeared to be marijuana.

Agent Sunia conducted a field test of the substance in the plastic bags and confirmed that it was marijuana. The officers then advised Sefo and. Punefu of their constitutional rights. The defendants each initialed and signed a *Miranda* form written in Samoan and signed a waiver of these rights. They were then formally placed under arrest. The defendants gave verbal statements which were documented in the officers' investigative report.

Sefo and Punefu were transferred to the west police substation. At the substation they both gave written statements. Both Sefo and Punefu dictated their statements to Agent Sunia. Agent Sunia recorded the statements, in Samoan, on a police form used for such purposes. When each statement was completed, Agent Sunia read the statement back to the defendant and each defendant signed his statement.

## Discussion

A. Suppression of Marijuana and Other Evidence

■ Article I, § 5 of the Revised Constitution of American Samoa guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, § 5 also requires that warrants for searches or seizures be issued only upon a showing of probable cause. These provisions mirror the Fourth Amendment of the United States Constitution. The Revised Constitution of American Samoa also provides that "[e]vidence obtained in violation of this section shall not be admitted in any court."

■ Under the constitution, therefore, the government generally must obtain a warrant before seizing a person. If the government makes a seizure, or arrest, without a warrant, the arrest must either come under an established exception to the warrant requirement or be based on probable cause. *See American Samoa Govt v. Luki*, 12 A.S.R.2d 82, 83 (Trial

97

Div. 1992) ("Generally, an arrest whether with or without a warrant must be supported by probable cause."); *Carroll v. United States*, 267 U.S. 132, 155-56 (1925) (probable cause is the "reasonableness" standard for warrantless searches and seizures). A.S.C.A. § 46.0805 provides that:

> A police officer is authorized, and it is his duty, to make an arrest without a warrant in the following cases:
> (1) when a felony is committed in his presence; ...
> (3) of persons found near the scene of a felony and suspected of committing it, where such suspicion is based on reasonable grounds and the arrest follows the crime by a short time; ...

Sefo and Punefu claim that when they accompanied Agent Sunia and Agent Tavai to the police station in Fagatogo, they were subject to an illegal arrest, and that the search of their persons and effects which produced the marijuana and other evidence at issue was therefore a violation of their constitutional rights. They claim that the arrest was illegal because it was based neither on probable cause nor the requirements of A.S.C.A. § 46.0805. They also claim that they did not voluntarily accompany Agent Sunia and Agent Tavai to the police station. We do not need to reach the consent issue because we find that both probable cause and the requirements of A.S.C.A. § 46.0805 were met.

Probable cause is more than bare suspicion and less than absolute certainty. *See Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir.), *cert. denied*, 116 S.Ct. 125 (1995).

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusion about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*American Samoa Govt v. Napoleone Loia*, 16 A.S.R.2d 1, 4 (Trial Div. 1990), quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983); *United States v. Cortez*, 449 U.S. 411, 418 (1981). The existence of probable cause is determined from the totality of the circumstances. *Gates*, 462 U.S. at 230-32.

Agent Sunia witnessed a man named Soli as he approached Sefo and Punefu. He witnessed the three individuals walking down the street, with Punefu lingering behind the other two. He watched Soli and Sefo walk

toward the public bathroom while Punefu stood on the street corner and looked up and down the area. He saw Soli hand money to Sefo and he saw Sefo reach into his lavalava, pull out a plastic baggie and hand it to Soli. He saw Soli hand the plastic baggie back to Sefo. And, he observed Sefo and Punefu walk towards each other again. Agent Sunia testified that his observation of these actions led him to believe Sefo and Punefu were engaged in selling drugs.

Probable cause can arise from witnessing the apparent purchase of drugs, *see, e.g., United States v. Taylor*, 997 F.2d 1551, 1553-54 (warrantless search where police discovered cocaine in defendant's pant pocket valid because probable cause existed where police observed defendant's apparent purchase of drugs); *United States v. White*, 655 F.2d 1302, 1303-04 (D.C.Cir.1981) (per curiam) (police had probable cause after observing suspect in a high narcotics area exchange currency for small object), especially when the law enforcement officer witnessing the event has specialized training in narcotics surveillance and apprehension. *See, Napoleone Loia*, 16 A.S.R.2d at 5-6; *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984). Agent Sunia has considerable training in narcotics surveillance and apprehension, and worked as an undercover agent for a number of years in American Samoa, masquerading as a member of the drug subculture. We find that Agent Sunia had probable cause to arrest defendants without a warrant. In addition, the requirements of A.S.C.A. § 46.0805 were met because the possession of marijuana, or other controlled substances, is a felony. A.S.C.A. §§ 13.1006, 13.1022.

The fact that Agent Sunia or Agent Tavai did not arrest defendants on the street near the Iseula boat shed does not vitiate the existence of probable cause. Agent Sunia testified that he chose to obtain the defendants' consent to go to the station because there were other people in the marketplace area, including associates of the defendants, and because A'asa had once before tried to assault him with a rock. Sunia chose to use questioning Sefo and Punefu about the robbery as the means of obtaining this consent. Sefo and Punefu claim that they did not consent, but were instead forced into the police vehicle. We do not find this testimony particularly credible, but even if they did not give consent, probable cause to arrest still existed. Because Agent Sunia had probable cause to arrest, the issue of whether, or why, Sefo and Punefu consented to go to the station is irrelevant. *See United States v. Delgado*, 4 F.3d 780, 788 (9th Cir. 1993).

■ When law enforcement officials have made a valid arrest, they may make a full search of both the suspect and the area within his immediate control for weapons and evidence. *Taylor*, 997 F.2d at 1553 (D.C.Cir. 1993) ("If the police have probable cause for arrest, an otherwise lawful warrantless arrest and a search of the arrestee and the area within his

immediate control does not violate the Fourth Amendment."). Sefo and Punefu claim that their consent to search was not voluntary because they were being held illegally and because they were not told that they were free to leave. Sefo and Punefu's detention, if not voluntary, was based on probable cause, and thus was not illegal. Additionally, Agent Sunia testified that he did tell the defendants that they were free to leave at any time. The testimony given at the hearing indicates that Sefo and Punefu consented to a search. However, because the officers were entitled to search both defendants incident to a valid arrest, the issue of whether, or why, Punefu consented to a search of his backpack and whether, or why, Sefo consented to a search of his lavalava and shorts pockets is irrelevant.

It also is not relevant that the search preceded the formal arrest. A search can be conducted immediately prior to arrest if the police had probable cause to arrest the suspect before conducting the search. "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest or vice-versa." *Rawlings v. Kentucky*, 448 U.S. 113, 111, 100 S.Ct. 2556, 2564 (1980).

In conclusion, then, we find that although Sunia and Tavai did not arrest Sefo and Punefu in the marketplace, they had probable cause to do so. The search of their persons and effects, whether or not done with Sefo's and Punefu's consent, was a search incident to a valid arrest and therefore did not violate their constitutional rights. The marijuana, money, Christmas stocking, and other evidence produced in the search will not be suppressed.

B. Suppression of Written Statements

Defendants also seek to suppress written statements on grounds that the statements were not written by themselves and that they were ordered to sign the statements. Defendants claim that the statements were thus not voluntary and that they did not voluntarily waive their rights against self-incrimination.

■ Any confession or statements given to the police must comply with the standard as established in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), with certain elements that have been modified or clarified over the years. "In essence, if a suspect 'voluntarily, knowingly, and intelligently' waives his right to remain silent and to an attorney, a statement made by a suspect who is in custody is admissible." *American Samoa Govt v. Gatoloai*, 23 A.S.R.2d 65 (Trial Div. 1992), citing *Miranda*, 384 U.S. at 444. The relinquishment of rights must be voluntary in the sense of being a free and deliberate choice, and knowing

and intelligent in the sense of having an awareness of the nature of the right and the consequences of waiving it. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*, citing *Fare v. Michael C.* 442 U.S. 707, 725 (1979). *See also Colorado v. Spring*, 479 U.S. 564, 573 (1987).

Sefo and Punefu both made written statements regarding their activities in the marketplace earlier that day. They made these statements about two hours after they had been formally, and validly, arrested. Sunia verbally advised them of their constitutional rights. Sefo and Punefu both signed a *Miranda* form, written in Samoan, which listed each of their rights, and wrote their initials next to each enumerated right. On the same forms, they signed a waiver of these rights. All of these actions took place prior to the time they made their statements. We find that the totality of the circumstances surrounding these actions show that Sefo and Punefu made an uncoerced choice and had the requisite level of comprehension of the choice they were making.

Sefo and Punefu made their statements at the west police substation. They had been transferred there from the Fagatogo police station after their arrest. Both Sefo and Punefu made their statements by dictating to Sunia, who recorded their words on a police form typically used for that purpose. At the beginning of each written statement is a sentence indicating that the statement was recorded by the law enforcement officer, not the defendants themselves. After each statement was recorded, Sunia read the statement back to Sefo and Punefu so that they would know what had been recorded and they could make any needed changes. Both Sefo and Punefu signed their respective written statements.

Nothing in these actions indicates to us that the defendants' statements were anything less than voluntary. It is not unusual for the police to record a statement for defendants, especially when they indicate that although willing to make a statement, they are either not able or are not willing to record it themselves.

We find, therefore that the written statements were not made in violation of Sefo's or Punefu's constitutional rights. The statements will not be suppressed.

## Conclusion and Order

On the foregoing, defendants' motion to suppress is denied.
It is so ordered.