_____

No. 95-3660SI
_____

United States of America,     *
                              *
        Appellee,       *
                              *  On Appeal from the United
   v.                 *  States District Court
                              *  for the Southern District
                              *  of Iowa.
Bernard Francis Rogers,     *
                              *
        Appellant.      *


_____

Submitted:  April 9, 1996

Filed:  July 26, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and HANSEN, Circuit Judges.
_____

RICHARD S. ARNOLD, Chief Judge.


    A jury convicted Bernard Rogers of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846(a)(1) and two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  The District Court[1] sentenced him to twenty years' imprisonment on each count, all to run concurrently.  Rogers challenges his convictions on three grounds:  improper admission of prior-crimes evidence; an erroneous jury instruction; and sufficiency of the evidence.  We affirm.

---

[1]The Hon. Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Between 1992 and 1994, Rogers took part in a multi-state scheme to distribute methamphetamine. He was supplied with the methamphetamine by Donald Jones and Willie Olsen of California. Rogers, in turn, supplied methamphetamine to Jack Pyle, Jerry Tolkan, and Dennis Rosenboom. The drugs were distributed from hotel rooms in the Des Moines, Iowa, and Kansas City, Missouri, area. Following several years of multi-state investigation by law-enforcement officers, Rogers was indicted and later convicted of conspiracy to distribute methamphetamine between September 1992 and May 1994; and distribution of methamphetamine on February 15, 1994, and March 26, 1994. The following evidence was adduced at trial in support of his convictions.

Rogers owned an auto-repair shop known as B & W Auto Repair, located in Independence, Missouri. In September of 1992, he was linked to a drug house in Ontario, California. Officers searched the house and found ten loaded firearms, one pound of methamphetamine, and approximately $55,000 in cash. The link to Rogers came in the form of a B & W business card found in a duffle bag carried by Barry Fillpot, who arrived at the house as the search was proceeding. In addition to the business card, the bag contained drug notes, approximately $20,000 in cash, and round-trip airline tickets which showed that Fillpot had recently arrived at Ontario International Airport from Missouri.

The following month, October 1992, police responded to an anonymous complaint that drugs were being used at B & W. Fillpot, who was the lead mechanic at the shop, gave the officers verbal and written permission to conduct a search. No controlled substance was found.

In January of 1994, Don Johnson, while driving a car registered to Rogers and Willie Owens, was arrested in

Independence, Missouri. The car contained approximately $30,000 in cash and 17.5 grams of methamphetamine.

On February 15, 1994, Rogers stayed at The Days Inn in Des Moines, Iowa, with Jack Pyle. Shelia Buschboom, an employee of the Best Western Colonial, testified that Rogers, Pyle, and two other men checked into the Best Western Colonial between February 14 and 15, 1994. Just four days later, on February 19, Pyle was arrested at the Bavarian Inn in Des Moines with 32 grams of methamphetamine, a handgun, $10,000 in cash, and a safe. He testified that he received the drugs from Rogers.

Rogers and Pyle checked into The Inn Motel in Des Moines, Iowa, on March 26, 1994. Pyle testified that the two men, along with Dennis Rosenboom, conducted a one-pound methamphetamine transaction. Pyle's testimony was corroborated by the testimony of Special Agent Vic Muñoz, who presented documentary evidence in the form of telephone receipts. In addition, Connie Newlin, an employee of The Inn, testified that Rogers and Pyle registered at The Inn on March 26, 1994.

In April of 1994, officers found a Western Union money transfer and a Federal Express Voucher from B & W during a search of the Donald Jones residence in Ontario, California. The notes contained a reference to Rogers concerning the sum of $340,500 and the following notation: "Bernie owing $57,000."

Later in April, Pyle was arrested in Des Moines while in possession of one-half pound of methamphetamine he received from Rogers. Pyle signed a plea agreement on July 21, 1994, and agreed to cooperate with law enforcement. At trial, he testified that Rogers fronted him 15 to 20 pounds of methamphetamine at approximately $20,000 an ounce. He stated that he traveled to Rogers's home in Blue Ridge, Missouri, to pick up the methamphetamine and then returned to Iowa, where he distributed it

-3-

to his customers. Pyle further testified that Rogers had told him that he received the methamphetamine from the West Coast and that his connection was "Willie." According to Rogers, the drug money was sent by Western Union from B & W to California. Pyle's wife, Carol Pyle, testified that she was directed by Jack Pyle to transport the proceeds from methamphetamine sales in Des Moines to Rogers in Kansas City.

Another alleged co-conspirator, Jerry Tolkan, also testified against Rogers. He stated that he received methamphetamine from Rogers and paid him between $12,000 and $14,000, plus a horse trailer. Tolkan later gave the methamphetamine to Dennis Rosenboom.

Based on these facts, and other evidence presented at the trial, the jury found Rogers guilty of the three counts charged in the indictment. Rogers now raises the following issues on appeal.

## II.

First, Rogers challenges the admission into evidence of his two prior state-court convictions. During the trial, the government introduced certified copies of Rogers's prior convictions for unlawful possession of a controlled substance with intent to distribute, and maintaining a vehicle where a controlled substance was kept. The convictions occurred in Oklahoma in 1990.

Rogers argues that admission of this evidence served no permissible purpose under Fed. R. Evid. 404(b). Specifically, he urges that the state offenses were not similar in kind to the current charges. In the alternative, he urges that the probative value of the evidence does not outweigh the prejudicial impact. The government claims that the convictions were probative of Rogers's knowledge, and that any error in admitting the evidence was harmless.

Under Rule 404(b), evidence of prior crimes is admissible to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."  Evidence designated for one of these purposes must be:  (1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not the cause of prejudice that substantially outweighs its probative value.  United States v. Escobar, 50 F.3d 1414, 1421 (8th Cir. 1995).  The trial court has broad discretion when determining the admissibility of other-crimes evidence.  Ibid.

The issue here is whether Rogers's prior crimes are similar in kind to the crimes charged in the indictment.  This Court has held that "testimony of prior drug transactions is admissible to prove that a defendant acted knowingly and intentionally."  Ibid. (citations omitted). We have recognized, for example, that a defendant's previous conviction for large-scale drug dealing may be admissible to prove knowledge in a later prosecution for conspiracy to distribute the same drug.  United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995) (involvement in marijuana dealing under different circumstances tends to prove knowledge in marijuana conspiracy prosecution).  But our cases stop short of recognizing that all previous drug convictions are similar in kind to drug charges involved in a subsequent prosecution of the same defendant.  In United States v. Mejia-Uribe, 75 F.3d 395, 398 (8th Cir. 1996), we held that a defendant's previous conviction for the single sale of a drug was not similar in kind to a later conspiracy to distribute the same drug.  Rogers's prior convictions involved possession of methamphetamine with the intent to distribute.  This crime, we think, is similar in kind to distribution of methamphetamine, which is the crime charged in two of the three counts against Rogers.

On the other hand, the probative value of the prior crimes

seems to us quite small. The fact that Rogers had previously possessed methamphetamine with the intention of distributing it may tend to show that he knew the substance involved in the present case was methamphetamine. This knowledge, however, was not really in issue at the trial, except in the formal sense that a plea of not guilty puts all elements of a charged crime in issue. On the whole, although Rogers has a substantial point, we are not persuaded that the trial court abused its broad discretion in admitting this prior-crimes evidence.

III.

Rogers's second argument relates to the "reasonable doubt" instruction given to the jury. The District Court charged the jury as follows:

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Rogers proffered the addition of the following sentence: "A reasonable doubt is one that fairly and naturally arises from the evidence or lack of evidence produced by the government." Appellant's Br. 15. The Court refused to supplement its instructions to the jury in this way.

The Constitution requires that a trial court instruct the jury on the government's burden of proof. <u>Victor v. Nebraska</u>, 114 S. Ct. 1243 (1994). The instruction must "convey the concepts of reasonable doubt and presumption of innocence . . .." <u>United</u>

States v. Collins, 66 F.3d 984, 987 (8th Cir. 1995). However, a "defendant is not entitled to a particularly worded instruction where the instruction[] given . . . correctly state[s] the applicable law and adequately and fairly cover[s] the substance of the requested instruction." United States v. Parker, 32 F.3d 395, 401 (8th Cir. 1994).

We are confident that the instruction given adequately informed Rogers's jury, as it has many others, of the government's burden of proof. The instruction has been repeatedly approved by this Court as an accurate statement of the requisite burden of proof. See, e.g., United States v. Mabry, 3 F.3d 244, 249 (8th Cir. 1993), cert. denied, 114 S. Ct. 1403 (1994). Thus, it was not error for the Court to refuse to supplement its charge to the jury.[2] The additional language, in any event, says nothing that is not already obvious to people of common sense. That a lack of evidence may cause one to have a reasonable doubt is self-evident.

IV.

Finally, Rogers claims that the evidence was insufficient to support his convictions of conspiracy to distribute methamphetamine and distribution of methamphetamine. In reviewing this claim, we view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences. Shoffner, 71 F.3d at 1433. We reverse only if no reasonable jury could have concluded that the defendant was guilty beyond a

_____

[2]Our sister circuits have considered this exact claim -- that it was error for the district court to refuse to instruct the jury that reasonable doubt may arise from a lack of evidence -- and rejected it. See, e.g., United States v. Baskin, 886 F.2d 383, 388 (D.C. Cir. 1989) (reasonable doubt instruction not error where court refuses to include "lack of evidence" language), cert. denied, 494 U.S. 1089 (1990); United States v. Tant, 412 F.2d 840, 840-41 (5th Cir.) (same), cert. denied, 396 U.S. 876 (1969); United States v. Carus; 358 F.2d 184, 187 (2d Cir. 1966) (same).

reasonable doubt.  <u>Ibid.</u>

To prove that Rogers engaged in a drug conspiracy, the government must demonstrate that an agreement existed between at least two people; that the defendant knew of the conspiracy; and that the defendant intentionally joined the conspiracy.  <u>Ibid.</u>  To prove that Rogers engaged in the distribution of methamphetamine, the government was required to show that Rogers knowingly sold or otherwise transferred methamphetamine.

The evidence was more than sufficient for the jury to find Rogers guilty beyond a reasonable doubt.  Several of Rogers's alleged co-conspirators testified against him, including Pyle and Tolkan.  Their testimony established that Rogers supplied them with methamphetamine in resale quantities on several occasions, including the dates charged in the indictment.  <u>United States v. Eneff</u>, 79 F.3d 104, 105 (8th Cir. 1996) ("evidence of multiple sales of resale quantities is sufficient in and of itself to make a submissible case of a conspiracy to distribute").  But we need not depend solely on the testimony of co-conspirators in this case.  Their testimony was corroborated by seemingly disinterested witnesses and telephone records from various hotels where the men met.  Moreover, Rogers's business, B & W, was directly connected with the transfer of drug money from Missouri to California, as evidenced by Western Union receipts.

Rogers points out that the testimony of his alleged co-conspirators may have been influenced by their interest in receiving more lenient sentences.  Self-interest may have been the impetus for their testimony, but that fact does not render the testimony incredible.  Whether or not their testimony was credible was for the jury to decide.  <u>United States v. Jenkins</u>, 78 F.3d 1283, 1287 (8th Cir. 1996).  Especially given the extent of corroborative evidence, it was reasonable for the jury to believe the alleged co-conspirators' account of Rogers's involvement.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.