[No. 37856-2-I. Division One. April 28, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL W. CASTLE, *Appellant*.

*James R. Dixon, Kathryn A. Russell,* and *Nielsen & Acosta,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Shannon D. Anderson, Deputy,* for respondent.

ELLINGTON, J. — When police arrested Michael Castle and searched his car, they found a black zippered bag containing several items of drug paraphernalia with cocaine residue. Mr. Castle was convicted of possession of cocaine. The central question we confront in this appeal is whether the court's non-standard instruction on reasonable doubt was constitutionally valid. We hold the instruction properly advised the jury as to the presumption of innocence, the State's burden of proof, and the concept of reasonable doubt. The instruction therefore did not infringe on Mr. Castle's due process rights, and we affirm.

### Facts

Early one morning, Seattle Police Officer William Howe noticed a car with a broken left brake light. He stopped the car and asked the driver, Michael Castle, for his license. Mr. Castle told Officer Howe his license was suspended. A computer check indicated Mr. Castle had two outstanding arrest warrants, so Officer Howe arrested him and searched his car. Behind the driver's seat, Officer Howe discovered a black zippered bag containing two glass pipes, a lighter, a vial with a plastic cap, two small screens, a scale, two measuring spoons, and a grinder, all of which bore a residue that field-tested positive for cocaine. Officer Howe also found in the bag a letter addressed to "Mike," a gold and silver watch, a pager, and a spare battery for a cellular telephone. Mr. Castle had a cellular phone in his jacket pocket.

Mr. Castle waived his right to remain silent and told Officer Howe the black bag was not his. He claimed his car had been stolen about a month before and he had just recovered it. He acknowledged, however, that the letter found in the bag was his, and asked how he could get his cellular phone and pager back.

Mr. Castle was charged by information with one count of unlawful possession of cocaine. The information was later amended to include a second count of possession of drug paraphernalia.

Judge Patricia Aitken, a very able and respected trial judge who has for many years chaired the Washington Pattern Jury Instruction Committee, indicated she has "long been dissatisfied" with the usual pattern instructions on reasonable doubt. She gave instead an instruction nearly identical to one proposed by the Federal Judicial Center. The instruction informed the jury it should convict Mr. Castle if "firmly convinced" of his guilt, but must give Mr. Castle the benefit of the doubt and find him not guilty if there was a "real possibility" he was not guilty. The court refused to add that a reasonable doubt may arise from "lack of evidence." The court also refused to instruct the jury that "[m]ere proximity of the defendant to an alleged controlled substance is not sufficient evidence to establish possession." These instructions are the focus of Mr. Castle's appeal.

### Reasonable Doubt Instruction

In a criminal case, the jury must be instructed that the State has the burden to prove each essential element of the crime beyond a reasonable doubt. It is reversible error if the instructions relieve the State of that burden. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 116 S. Ct. 2568, 135 L. Ed. 2d 1084 (1996). The instructions must define reasonable doubt, although no particular wording is required. *State v. Coe*, 101 Wn.2d 772, 787, 684 P.2d 668 (1984). Various forms of instructions on reasonable doubt have been approved in Washington, so long as allocation of the burden of proof is

clearly communicated. *Coe,* 101 Wn.2d at 787. The effect of a particular phrase in an instruction is determined by considering the instruction as a whole, and reading it in the context of all the instructions given. *State v. Benn,* 120 Wn.2d 631, 845 P.2d 289 (1993); *see also Cupp v. Naughton,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973).

■ Here, the trial court instructed the jury as follows:[1]

[1]The full text of the instruction proposed by the Federal Judicial Center is as follows:

"[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

The full text of both Washington pattern instructions is as follows:

"The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.

"A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

"A reasonable doubt is one for which a reason exists and may arise from the *evidence or lack of evidence.* It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt."

WPIC 4.01.

"The defendant has entered a plea of not guilty, which puts in issue every element of the crime charged. The State, as plaintiff, has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

"A defendant is presumed innocent. This presumption continues throughout the entire trial unless you find during your deliberations that it has been overcome by the evidence beyond a reasonable doubt.

"A reasonable doubt is one for which a reason exists and may arise from the *evidence or lack of evidence. A reasonable doubt is a doubt that would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence.*"

WPIC 4.01A.

The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Mr. Castle's challenge focuses on the phrase "a real possibility that he is not guilty," which he claims imposes a higher standard of doubt for acquittal (and a lower standard of proof for conviction) than is constitutionally permissible. Mr. Castle relies principally on the Supreme Court holding in *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). In *Cage*, the jury was instructed that a reasonable doubt

is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. . . . What is required is not an absolute or mathematical certainty, but a moral certainty.

498 U.S. at 40. In a short per curiam opinion, the Supreme

*Court held the instruction impermissibly lowered the government's standard of proof:*

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage,* 498 U.S. at 41.

The Supreme Court again addressed the propriety of reasonable doubt formulations in *Victor v. Nebraska,* 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). The court there considered two instructions, one from California and one from Nebraska. Writing for the majority, Justice O'Connor described the reasonable doubt standard as "an ancient and honored aspect of our criminal justice system," but one which nonetheless "defies easy explication." She framed the question thusly:

> The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* [*In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)] standard [of proof beyond a reasonable doubt for every element of a charged offense].

511 U.S. at 6.

Among the challenges to the California instruction,[2] the

---

[2]The full text of the instruction given in *California v. Sandoval,* 4 Cal. 4th 155, 841 P.2d 862, 14 Cal. Rptr. 2d 342 (1992), was as follows:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

"Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which,

Court considered petitioner Sandoval's challenge to the definition of reasonable doubt as "not a mere possible doubt." In disposing of the argument for a unanimous court, Justice O'Connor noted that the instruction at issue in *Cage* included nearly identical language,

> but we did not intimate that there was anything wrong with that part of the charge. That is because "[a] 'reasonable doubt,' at a minimum, is one based on 'reason.'" A fanciful doubt is not a reasonable doubt. As Sandoval's defense attorney told the jury, "Anything can be possible . . . . [A] planet could be made out of blue cheese. But that's really not in the realm of what we're talking about."

*Victor*, 511 U.S. at 17 (citations omitted).

Mr. Castle equates "real" with "actual," and argues that the "real possibility" language in Judge Aitken's instruction is equivalent to the "actual substantial" language rejected in *Cage*. The *Cage* court did not discuss the term "actual," however, but instead concentrated on the combined effect of the terms "substantial doubt"[3] and "grave uncertainty." While "real possibility" may indeed be equivalent to "actual possibility," the *Cage* court never discussed either phrase. *Cage* is no help to Mr. Castle. And while *Cage* never addressed the language at issue here, numerous other courts have done so. All have found the language permissible.

In Justice Ginsberg's concurring opinion in *Victor*, she noted the difficulties posed by efforts to define reasonable doubt, but recognized that "even if definitions of reasonable doubt are necessarily imperfect," juries may be confused in the absence of some guidance as to its meaning. She approved as "clear, straightforward and accurate"

---

after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

511 U.S. at 7.

[3]The phrase "substantial doubt" has been disapproved in Washington as confusing and misleading. *State v. Coe*, 101 Wn.2d 772, 788, 684 P.2d 668 (1984); *State v. Flores*, 18 Wn. App. 255, 257, 566 P.2d 1281 (1977).

the same Federal Judicial Center definition from which the trial court took the instruction in Mr. Castle's case:

> This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The "firmly convinced" standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a "real possibility" that the defendant is innocent. This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly.

*Victor*, 511 U.S. at 27.[4]

In *United States v. Conway*, 73 F.3d 975 (10th Cir. 1995), the Tenth Circuit agreed with Justice Ginsberg's opinion in *Victor*, also describing the instruction given here as " 'clear, straightforward, and accurate' ":

> We agree that the "firmly convinced" language, juxtaposed with the insistence that a jury must acquit in the presence of "a real possibility" that the defendant is not guilty, is a correct and comprehensible statement of the reasonable doubt standard. Also, we reject the defendant's contention that the phrase "real possibility," as opposed to "possibility," impermissibly shifts the burden of proof.

73 F.3d at 980.

The Fifth Circuit cited Justice Ginsberg's concurrence in *Victor* in upholding an instruction like that given here, requiring the jury to be "firmly convinced" of defendant's guilt and characterizing reasonable doubt as a "real possibility" of innocence. *U. S. v. Williams*, 20 F.3d 125, 132 (5th Cir. 1994). The court found that the term "real possibility" merely distinguished the real from the fanciful; juxtaposed with the requirement that the jury be "firmly

---

[4]Mr. Castle notes that the model Federal Judicial Center instruction includes a portion omitted by the trial court here, which directly contrasts the criminal and civil standards of proof. See n.1 above. Justice Ginsberg cited this language as useful to juries, and we agree. We do not, however, find that the presence or absence of the civil-criminal comparison is relevant to analysis of the constitutional sufficiency of the definition of reasonable doubt.

convinced" of defendant's guilt, the "real possibility" language left the circuit court "with the firm conviction that the jury, upon hearing the judge's instructions, knew how to determine whether there was a reasonable doubt as to the defendants's guilt." *Williams*, 20 F.3d at 132.

Courts considering the "real possibility" phrase have uniformly upheld the instruction. The D. C. Circuit considered the same instruction (and the same arguments) in *U.S. v. Taylor*, 997 F.2d 1551 (D.C. Cir. 1993), and found no infirmity. Noting that, as of 1993, seven circuits had considered the instruction and none had found its use to be reversible error,[5] the court rejected the argument that the "firmly convinced" language lowered the government's standard of proof, as well as the argument that the "real possibility" language shifts the burden of proof to the defendant. *Taylor*, 997 F.2d at 1557.

In an opinion cited by Mr. Castle, the Fourth Circuit upheld the instruction but expressed concern about the possibility of burden-shifting:

> The . . . instruction . . . illustrates the confusion that is engendered by attempting to define a reasonable doubt in terms of a "real possibility" that the accused is not guilty. The district court did not explain the difference that it perceived between a "possibility" and a "real possibility." It failed to tell the jury that the accused did not have the burden of showing a "real possibility" of innocence. Implying the evidence must show a real possibility of innocence to justify acquittal trenches on the principle that a defendant is presumed to be innocent.

*U.S. v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987). We do not agree, however, with the Fourth Circuit's fear that the

---

[5]The *Taylor* court cited to *U.S. v. Gibson*, 726 F.2d 869, 874 (1st Cir.), *cert. denied*, 466 U.S. 960, 104 S. Ct. 2174, 80 L. Ed. 2d 557 (1984), *U.S. v. McBride*, 786 F.2d 45, 52 (2d Cir. 1986), *U.S. v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987), *cert. denied*, 485 U.S. 934, 108 S. Ct. 1108, 99 L. Ed. 2d 269 (1988), *U.S. v. Hunt*, 794 F.2d 1095, 1100 n.4, 1101 (5th Cir. 1986), *U.S. v. Hall*, 854 F.2d 1036, 1038-39 (7th Cir. 1988), *U.S. v. Velasquez*, 980 F.2d 1275, 1278-79 (9th Cir. 1992), *cert. denied*, 508 U.S. 979, 113 S. Ct. 2979, 125 L. Ed. 2d 677 (1993), *U.S. v. Barrera-Gonzales*, 952 F.2d 1269, 1273 (10th Cir. 1992).

"real possibility" language potentially contradicts the principle of the presumption of innocence. The presumption operates to require acquittal if a reasonable doubt exists. It does not require acquittal for fanciful or imaginary doubt. ("A planet could be made of blue cheese.") Defining for a jury when doubt is reasonable, while an inexact science, does not shift the burden of proof to defendant when no part of the definition contradicts the court's plain instruction that the burden is entirely the State's. As the *Porter* court itself noted, the phrase does not shift the burden, it simply fails to allocate it, and other parts of the instruction clearly do so. *Porter*, 821 F.2d at 973.

In sum, the instruction challenged here has repeatedly been upheld upon review. We concur. The "real possibility" language distinguishes reasonable from unfounded doubt. The term "real" connotes not a quantitative, but a qualitative attribute. It refers to the nature of the possibility, not to its quantum. "Real" is defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1890 (1976) as "that is precisely what its name implies: not merely so called: truly possessing the essence of what it is called: as (1) authentic, genuine (2) not merely apparent: actual, true . . . (4) not illusory." Thus, a "real possibility" is a genuine possibility, as opposed to an imaginary or conjectural one. *See also U.S. v. Newport*, 747 F.2d 1307, 1308 (9th Cir. 1984). While some might argue for a term different from or in addition to the word "real," the language of an instruction is not to be parsed in isolation from its context. Viewed in its entirety, we see no likelihood that the instruction effectively lowered the State's standard of proof or shifted the burden to the defendant. Whether this instruction is clearer for jurors than the standard instruction is a matter for debate, but we see no constitutional flaw in the instruction given here.

## Lack of Evidence Instruction

The court instructed the jury that it should find the defendant guilty or not guilty based upon its "consider-

ation of the evidence." The court refused Mr. Castle's proposed additional instruction that reasonable doubt can also arise from a lack of evidence. Relying on *State v. Cleveland*, 58 Wn. App. 634, 794 P.2d 546 (1990), Mr. Castle asserts this additional instruction is essential to the jury's understanding of the concept of reasonable doubt, and that failure to include it is reversible error, particularly in the context of the non-standard reasonable doubt instruction given here.

The *Cleveland* court did not hold that juries must be instructed that reasonable doubt may arise from lack of evidence. Rather, in considering a prosecutor's improper argument that the defendant's "able counsel" would not have overlooked any opportunity to present any available favorable evidence, the court concluded the argument, while improper, was harmless, noting (in dicta) that the jury had been properly instructed that reasonable doubt could arise from evidence or lack of evidence. *Cleveland*, 58 Wn. App. at 648-49.

Certainly reasonable doubt can arise from a lack of evidence, and certainly it would not have been error to so instruct the jury. The issue is whether such instruction was required. Washington and federal authorities hold to the contrary. *See State v. Perkins*, 32 Wn.2d 810, 872, 204 P.2d 207 (1949) (unnecessary to instruct that reasonable doubt might arise from lack of evidence); *State v. Costello*, 133 Wash. 170, 173, 233 P. 307 (1925) ("want of evidence" instruction not required); *U.S. v. Rogers*, 91 F.3d 53, 56-57 (8th Cir. 1996) (citing cases) (lack of evidence instruction not required).

Here, the court's instruction required the jury to apply the presumption of innocence unless it found the presumption "overcome by the evidence beyond a reasonable doubt." The plain meaning of this phrase is that the State's burden is to present sufficient evidence to overcome the presumption. Absence of evidence therefore is to the defendant's advantage. The instruction also advises the jury:

If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Nothing in this instruction suggests other than that a lack of evidence inures to defendant's benefit. This premise is a matter of simple common sense. As the Eighth Circuit observed, "[t]hat a lack of evidence may cause one to have a reasonable doubt is self-evident." *U.S. v. Rogers*, 91 F.3d at 57. We believe there is no likelihood that a jury so instructed would fail to appreciate that a lack of evidence could support reasonable doubt.[6]

We nevertheless think it preferable that the lack of evidence language be included. As earlier noted, the concept of reasonable doubt, while occupying a position of central importance in American jurisprudence, defies easy explication. In pursuit of a definition which may be "simple, straightforward and clear," it seems to us unwise to jettison what may be useful and cannot be confusing. The fewer the puzzles for the jury to solve, the greater our confidence that we have defined this central concept "accurately and with the precision owed to those whose liberty or life is at risk." *Victor*, 511 U.S. at 29 (Blackman, J. and Souter, J., concurring in part and dissenting in part). In some cases, moreover, the presence of the "lack of evidence" language has made a crucial difference in analysis of the effect of trial errors. *See e.g., Cleveland*, 58 Wn. App. at 648; *State v. Traweek*, 43 Wn. App. 99, 108, 715 P.2d 1148 (1986).

### *"Mere Proximity" Instruction*

Mr. Castle asked the court to instruct the jury that "[m]ere proximity of the defendant to an alleged controlled

---

[6]We note in this context that the California instruction at issue in *Victor* contained no "lack of evidence" language, and the court indicated no dissatisfaction with the absence. *See Victor*, 511 U.S. at 7-17.

substance is not sufficient evidence to establish posses-
sion." The court refused and instead instructed the jury as
follows:

> Possession means having a substance in one's custody or
> control. It may be either actual or constructive. Actual pos-
> session occurs when the item is in the actual physical custody
> of the person charged with possession. Constructive posses-
> sion occurs when there is no actual physical possession but
> there is dominion and control over the substance. Dominion
> and control need not be exclusive to establish constructive
> possession.

Mr. Castle does not argue that the court incorrectly
instructed the jury on what was necessary to establish
possession. Rather, he claims his more specific, "mere
proximity" instruction should also have been given
because, without it, he was unable to argue his theory of
the case. We find the court's instruction was complete and
accurate and fully enabled Mr. Castle to argue his theory.

Mr. Castle pursued two lines of defense at trial. First,
he denied constructive possession. (Only in this regard is
mere proximity relevant.) Alternatively, his defense (and
principal argument) was unwitting possession. He claimed
that he did not know the bag with the cocaine was in the
car because his car had been stolen and he had retrieved
it only moments before he was arrested. He testified that
after he discovered his car parked by the side of the road
near the Fremont bridge, it was filled with fast food bags
and other trash, and he had not had time to clean it out
or check its contents before the officer stopped him.

As to the defense that he did not have constructive pos-
session of the cocaine, the instructions given did not
prevent him from arguing that theory. The instructions
required the State to establish dominion and control,
which Mr. Castle himself essentially admitted. He testi-
fied he had complete control over the car and everything
in it. The State also established that a letter belonging to
Mr. Castle, a spare battery for a cellular phone that fit the
phone Mr. Castle was carrying, and a watch like that Mr.

Castle was known to wear were found in the bag along with the contraband. The State did not rely on mere proximity, nor was there a danger the jury would do so.

 Trial courts have considerable discretion in wording jury instructions. *State v. Rehak*, 67 Wn. App. 157, 165, 834 P.2d 651 (1992), *review denied*, 120 Wn.2d 1022 (1993). Instructions are sufficient if they properly inform the jury of the applicable law without misleading the jury, and permit each party to argue its theory of the case. *State v. LeFaber*, 128 Wn.2d 896, 903, 913 P.2d 369 (1996). It is not error to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theory of the case. *State v. Schulze*, 116 Wn.2d 154, 168, 804 P.2d 566 (1991). Because the trial court properly instructed the jury and Castle was not prevented from arguing his theory of the case, the court did not abuse its discretion when it refused to give his proposed instruction.

*Conclusion*

In this case an experienced trial judge, dissatisfied with the standard instruction on reasonable doubt, made a well-considered decision to employ an alternative. Scholars will continue endlessly to debate the best definition of reasonable doubt. The search for alternatives is perilous, and the case law contains many examples of efforts which were found constitutionally wanting. But we find no infirmity in the instruction given here.

Affirmed.

BECKER, J., concurs.

AGID, J. (concurring) — I concur in the majority's excellent analysis of the trial court's reasonable doubt instruction. I write separately to express my opinion that the instruction Judge Aitken gave in this case is far more helpful to the jury and thus preferable to either of the

standard WPIC instructions. I therefore do not subscribe to the majority's statement at page 58 to the contrary.

Review denied at 133 Wn.2d 1014 (1997).