[No. 32896-8-II.   Division Two.   January 24, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE L. BENNETT, JR., *Appellant*.

*Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Carol L. Case, Deputy*, for respondent.

¶1 HUNT, J. — Bruce L. Bennett, Jr., appeals his attempted first degree escape conviction and sentence. He argues that (1) the reasonable doubt instruction was improper, (2) the evidence was insufficient to convict because a limiting instruction precluded the jury's finding one element of the offense, and (3) the trial court erred in including his Oregon offenses in his offender score because Oregon law does not require a unanimous verdict by all 12 jurors to convict of a crime. Finding no error, we affirm.

## FACTS

### I. JURY TRIAL

¶2 The State charged Bennett with attempted first degree escape, which required the State to prove that, at the

time of the attempted escape, he was being detained pursuant to a felony conviction or equivalent juvenile offense. RCW 9A.76.110(1). In order to avoid disclosing to the jury that Bennett had attempted to escape while serving time for murder, the parties stipulated that, at the time of the attempted escape, Bennett was being detained at a detention facility pursuant to a felony conviction. The stipulation stated that the parties stipulated "for purposes of establishing the elements of the crime." Ex. 40. The trial court read the stipulation to the jury and advised it that, as a result of the stipulation, the question of whether Bennett was being detained pursuant to a felony conviction was not at issue. Bennett did not object.

¶3 Bennett testified in his defense, denying any involvement in the attempted escape. The stipulation was the only evidence that Bennett had any prior convictions for any purpose, including impeachment.

¶4 After the parties rested, they discussed jury instructions. The State proposed an instruction modeled on 11 *Washington Pattern Jury Instructions: Criminal* 4.01A (2d ed. 1994) (WPIC). Bennett argued that this instruction was a comment on the evidence and that it was confusing because it used more than one example to help define reasonable doubt.[1] The trial court rejected Bennett's arguments and adopted the State's reasonable doubt instruction.

¶5 Additionally, in an apparent attempt to prevent the jury from using Bennett's prior felony conviction as propensity evidence, the trial court gave the following limiting instruction:

> Evidence that the Defendant has previously been convicted of a crime is not evidence of the Defendant's guilt. Such evidence may be considered by you in deciding what weight or credibility should be given to the testimony of the Defendant and for no other purpose.

---

[1] Bennett's counsel argued: "[I]nstead of a simple instruction that's been used for years, now there's one that says standard definition of reasonable doubt, it uses *firmly convinced* and if there is a *real possibility of being not guilty*." Report of Proceedings (July 20, 2004) at 102 (emphasis added).

Instruction 5, Clerk's Papers (CP) at 29. Although the State asserts that both parties offered this instruction and that neither party objected, the record before us on appeal does not show who proposed this instruction; nor does it contain any objection by either party. Moreover, neither party mentioned this instruction in closing argument.

¶6  The jury convicted Bennett as charged.

## II. SENTENCING

¶7  At sentencing, the parties and the court discussed Bennett's prior convictions, which included two Washington convictions (a second degree robbery and a second degree murder) and three Oregon convictions (a first degree burglary and two counts of first degree kidnapping). Bennett did not argue that the Oregon offenses were not comparable to Washington offenses, and the trial court did not address this issue. The sentencing court determined that Bennett had an offender score of four[2] and sentenced him to a standard range sentence.

¶8  Bennett appeals his conviction and sentence.

## ANALYSIS

### REASONABLE DOUBT INSTRUCTION

¶9  Bennett argues that the trial court committed reversible error in giving the jury instruction 3, a reasonable doubt instruction, taken from 11 WPIC 4.01A, at 68. We disagree.

¶10  Instruction 3 stated:

The Defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the

---

[2] The trial court found that the Washington convictions were the same criminal conduct under RCW 9.94A.589(1)(a) and, therefore, counted them as a single offense in calculating Bennett's offender score.

crime beyond a reasonable doubt. The defendant has no burden of proving that reasonable doubt exists.

A Defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. *There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.* If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is *a real possibility* that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

CP at 27 (Instruction 3) (emphasis added).

¶11 WPIC 4.01A is based on the reasonable doubt instruction that Division One of this court approved in *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656, *review denied*, 133 Wn.2d 1014 (1997), as supplemented by the Washington Supreme Court Committee on Jury Instructions. WPIC 4.01A cmt. at 24-25 (Supp. 1998).

¶12 Asking us to reject *Castle*, Bennett argues that (1) the "real possibility" language in the last sentence of the instruction is equivalent to the "substantial doubt" language the United States Supreme Court rejected in *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990), *overruled in part by Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (rejecting the standard applied in *Cage*)[3] and (2) the following language compounds the problem because the phrase "possible

---

[3] *Tyler v. Cain*, 533 U.S. 656, 658 n.1, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001) (citing *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); *Estelle*, 502 U.S. at 72 & n.4):

In *Cage*, [the Supreme] Court observed that a reasonable juror "could have" interpreted the instruction at issue to permit a finding of guilt without the requisite proof. In *Estelle v. McGuire*, however, th[e] Court made clear that the proper inquiry is not whether the instruction "could have" been applied

doubt" is not defined and the State's burden is presented in the negative—"There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt." Br. of Appellant at 5-6, citing a portion of instruction 3.

## A. Standards

¶13 In a criminal case, the trial court must instruct the jury that the State has the burden to prove each essential element of the crime beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). It is reversible error if the instructions relieve the State of that burden. *Pirtle*, 127 Wn.2d at 656. Such is not the case here, however.

¶14 Although no particular wording is required, the jury instructions must define reasonable doubt and clearly communicate the correct allocation of the burden of proof. *State v. Coe*, 101 Wn.2d 772, 787-88, 684 P.2d 668 (1984). This standard is not met if the defendant establishes that the wording of the challenged instruction misled the jury as to its functions and responsibilities under the law. *State v. Hayes*, 73 Wn.2d 568, 572, 439 P.2d 978 (1968).

¶15 We review a challenged jury instruction de novo, examining the effect of a particular phrase in an instruction by considering the instructions as a whole and reading the challenged portion in the context of all the instructions given. *Pirtle*, 127 Wn.2d at 656.

## B. *Castle*

¶16 The instruction at issue in *Castle* stated:

"The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is

unconstitutionally, but whether there is a reasonable likelihood that the jury did so apply it.

(Emphasis omitted) (citations omitted.)

the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.

"A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a *real possibility* that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

*Castle*, 86 Wn. App. at 53 (emphasis added).

¶17 The *Castle* court held that the term "real possibility" did not lower the State's standard of proof because it simply distinguished "reasonable from unfounded doubt" and referred "to the nature of the possibility, not to its quantum." *Castle*, 86 Wn. App. at 58. Comparing the instruction to the instruction at issue in *Cage*, the *Castle* court determined that *Cage* never addressed the "real possibility" language present in the instruction Castle challenged. *Castle*, 86 Wn. App. at 55.

¶18 Examining cases from a variety of jurisdictions, the *Castle* court noted that other courts had addressed similar language and that these courts had found the language permissible. *Castle*, 86 Wn. App. at 57 (discussing *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); *United States v. Conway*, 73 F.3d 975 (10th Cir. 1995); *United States v. Williams*, 20 F.3d 125 (5th Cir.), *cert. denied*, 513 U.S. 891 (1994); *United States v. Taylor*, 302 U.S. App. D.C. 349, 997 F.2d 1551 (1993) (citing seven additional cases examining similar language and finding no reversible error)).

¶19 The *Castle* court also distinguished *United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987), *cert. denied*, 485

U.S. 934 (1988), holding that although the *Porter* court concluded the use of the phrase "real possibility" may not fully define "reasonable doubt," the phrase did not shift the burden to the defendant, and other portions of the instruction clearly allocated the burden. *Castle*, 86 Wn. App. at 57-58. Additionally, the *Castle* court noted that the instruction at issue was very similar to the Federal Judicial Center model reasonable doubt instruction, which had been characterized as stating the reasonable doubt standard " 'succinctly and comprehensibly.' " *Castle*, 86 Wn. App. at 55-56 (quoting *Victor*, 511 U.S. at 27 (Ginsburg, J., concurring)).

## C. "Real Possibility"

¶20 As noted above, Bennett argues that the "real possibility" language in the last sentence of instruction 3 here is equivalent to the "substantial doubt" language the United States Supreme Court rejected in *Cage*, 498 U.S. at 41. We disagree.

¶21 First, we agree with Division One's conclusion in *Castle* that, as used here, the phrase "real possibility" simply distinguishes "reasonable from unfounded doubt" and refers "to the nature of the possibility, not to its quantum." *Castle*, 86 Wn. App. at 58.

¶22 Second, the instruction at issue in *Cage* differed significantly from the instruction here. The *Cage* instruction stated in relevant part:

"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial*

*doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*"

*Cage*, 498 U.S. at 40 (quoting *State v. Cage*, 554 So. 2d 39, 41 (La. 1989)).

¶23 Focusing on *all* of the italicized language in the above instruction, the Supreme Court in *Cage* held that the instruction was error because, when read as a whole, a jury could have understood the instruction to lower the state's burden of proof to something less than beyond a reasonable doubt:

> The [instruction] did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage*, 498 U.S. at 41. Such is not the case here, however, where, in contrast, instruction 3 does not use the term "substantial doubt" and does not refer to "grave uncertainty" or "moral certainty."

¶24 The terms "substantial doubt," used in the *Cage* instruction, and "real possibility," used here, are very different terms: "Substantial" refers to the degree or weight of doubt, while "real" refers to the qualitative nature of the doubt. Furthermore, the Supreme Court in *Cage* did not hold that the phrase "substantial doubt" alone invalidated the instruction. On the contrary, it clearly considered this phrase in context with other significant language in the erroneous instruction, specifically, the terms "grave uncer-

tainty" and "moral certainty," terms not present in WPIC 4.01A that the trial court gave here.

¶25 Accordingly, we disagree with Bennett that WPIC 4.01A fails to comply with due process requirements under *Cage*, and we decline Bennett's invitation to reject *Castle* on this basis.

## D. "Every Possible Doubt"

¶26 Bennett next challenges the following portion of instruction 3: "There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt." He argues that this language inadequately communicates the State's burden of proof because it frames the standard in the negative and does not define "possible doubt." *Castle* did not directly address this language.

¶27 Looking at the whole language of instruction 3 here, we hold that it clearly instructed the jury that it was the State's burden to establish guilt beyond a reasonable doubt and that the defendant is presumed innocent unless that burden is overcome. Merely stating the standard in the negative did not shift the burden of proof to the defense. Additionally, we conclude that the "possible doubt" language merely emphasized that a reasonable doubt is one based on a real possibility of innocence founded on reason and evidence, as opposed to any possibility of innocence, however farfetched. *See State v. Dykstra*, 127 Wn. App. 1, 9-11, 110 P.3d 758 (2005); *see also State v. Kuhn*, 139 Idaho 710, 85 P.3d 1109, 1111 (2003) (citing *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003)). Other courts have also approved similar instructions. *See e.g.*, *Victor*, 511 U.S. at 26-27 (Ginsburg, J., concurring); *Conway*, 73 F.3d at 980.

¶28 Accordingly, we adopt *Castle*, and we hold that the reasonable doubt instruction did not relieve the State of its burden of proof.

¶29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

¶30 Affirmed.

BRIDGEWATER and PENOYAR, JJ., concur.

Review granted at 158 Wn.2d 1010 (2006).